Good morning. May it please the Court, my name is Barbara Creel. I represent Thomas Matthew Lay, the petitioner appellant in this case. Mr. Lay is a man with a dramatic history of psychosis. He presented at his trial unable to aid and assist in his own defense, and the judge found so in November of 1994. He was then sent to the Oregon State Hospital for an evaluation, treated for three weeks, and released into jail. He was then released into the recognizance of his brother a few weeks later. That was in February. When he presented again for trial in April, he had been hospitalized for delusions. He presented at the emergency room complaining of rectal bleeding. The description that the Oregon Health Sciences University admission doctor provides And then he was let out a day before trial. Now, when they let him out, the doctor made a report, and did the doctor then find that he was fit for trial? No, Your Honor. There was never any finding of his competence to stand trial after he was found incompetent. The treating physician at the emergency hospital let him out, noting that he had trial the next day, but not making a finding. I know a rather odd one. When he was let out, after he was found incompetent, he was committed for 60 days. When he was let out at that point, I thought he was still incompetent. At the point that he was released from the Oregon State Hospital into jail in January 12, 1995, the treating doctor then made a finding that at this time he was able to aid in assist. There was never a judicial finding. Yes, I stand corrected. But the doctor was basing that on the treatment while he was in that state hospital for three weeks, and only qualifying her statements at that time. So many months passed between that time and when he presented delusional. So we know he wasn't competent in those weeks. As I was saying, the description shows that. What is missing from this record is a statement by the defendant that he wasn't competent or anything from his lawyer as to whether he was competent. In other words, in terms of anything in the Habeas proceeding, addressing now whether he was competent at the time, or even a doctor now saying he wasn't competent then. There's nothing like that. That's correct. Even in the post-conviction relief proceedings, there was no examination of the doctors, no testimony by them, no testimony by his trial attorney, looking backwards. That's correct. That's correct. And Mr. Ray's history shows, if you look at the doctor's reports, that he has no insight into his own mental illness. In the report to the Oregon State Hospital. That's right. Right. But he couldn't say, oh, I'm profoundly mentally ill, because he kept denying it even while he was giving his history of 15 years of psychiatric hospitalizations over time at Damage State Hospital. And as the, as Your Honor knows, even though the attorney is probably a good judge as to how his behavior is to determine competency, the attorney isn't a doctor. And so there is no doctors that came forward and said. There's also no doctor who's now saying that he was incompetent then. That he was incompetent at that time. No, we have the judicial determination, and that was based on Dr. Norbin Cooley's evaluation at the time that lists the profound mental illness over time, and saying he's not able to aid and assist. And then we have his release into custody, and then we have his release out of custody, and then we have his hospitalization. And during that hospitalization, he was given a course of the most, the strongest drugs available to treat psychosis. He was given a psychoactive cocktail of Depakote, Cogitin, Loxetane, and also Trilofan. Only after he was given these drugs was he released out into the public, not with a release. But he does have extensive conversations with the judge when he decides to waive the jury trial. Yes. And the judge seems to explore with him what kind of, what kind of, that he is on medication, and ask him if he understands what he's doing. And those answers, at least so far as we can tell from the record, and it's a cold record, so it's, all we can do is just put the words on a paper. But those appear to be, they're speaking in complete sentences, they appear to be very coherent answers. So you have a judge who has made an inquiry at the time that he's waiving his right to a jury trial. We don't know whether he was competent at that time or not, because the attorney never raised the issue. The attorney... Didn't the, hadn't the attorney consulted with another doctor? A psychiatrist, Dr. Piper Gerdes or something. The attorney says that he met with his client before trial at the state hospital, and spoke with Dr. Pipe Gerdes, and explains that to the court. But never does he say, and now, Your Honor, previously in November you found him incompetent, and now we need a finding that he is competent, or we need to... Well, but there was a finding by a second doctor when he was released from the Oregon hospital. In February, before the psychotic episode. Right, but this is a couple of months before, and then he has this psychotic incident just before trial. Right, right. So even noting that he had the psychotic episode, he doesn't ask the judge to postpone the trial, he doesn't ask him to get re-evaluated, he doesn't say... Did the judge in November find him incompetent, or did he get permission to find out whether he was competent? He issued an order, ER-410, saying he's unable to aid and assist in his own defense. And at that point, under Oregon law, he goes to the state hospital, and if he's never found able to aid and assist, he can be held for three years and then released. But they hold him until he... You know, it isn't helpful. I mean, you have a fairly strong case, but to misstate it is not helpful. When he was released, you said before, and I understand it to be true, that the psychiatrist did say that he was, at that point, competent. Yes. There wasn't another hearing, but in fact, the psychiatrist said he was competent. Yes. And then he was released into jail. It was at the proceeding... But you're saying that there was no finding, there was a finding. I'm sorry. There's no judicial determination except for the one finding him incompetent. We have doctors. We could have doctors' opinions, but we don't have a judicial determination that he was fit to proceed. So in that way, it was just like the judge said, you're incompetent, but let's go ahead and proceed anyway. The only difference was a span of several months went by between the finding of incompetence and the procession to trial, and the attorney did nothing to stop that procession. I'm curious, counsel. This is all here on ineffective assistance of counsel. If you're correct, if we were to agree with you that counsel was ineffective, what happens next? I believe that what happens is that he was then tried while incompetent, which is under clearly established Supreme Court law. He was only tried without knowing whether he was incompetent. There was a bona fide doubt. No, that's not true either. He was tried in the situation in which his lawyer did not raise the issue whether he was competent, although she should have. Which isn't to say that he wasn't competent, but that she should have. We don't know whether he was competent or not. Then in order to meet the prejudice prong, you'd have to show more than that the lawyer failed to make the motion. You'd have to show that there would have been some consequence if she had made the motion. Well, what we can look at on this record is that his profound history of psychosis, the finding of unable to aid and assist by the judge, and then the hospitalization. Based on that record, a court could find him incompetent because there's no other judicial finding. Maybe this is just curiosity on my part rather than anything that really affects our decision. I'm curious as to what it is that Mr. Lay wants out of all of this. Does he want a new trial? If he was tried while incompetent, his proceedings should be vacated and remanded for a new trial. But then what happens? Then that forces the state to try him again? Yes. Okay, and if he is found competent at this point, then the state can proceed. And if he's found competent and the state proceeds with his evidence, there's a possibility that Mr. Lay, instead of going to a mental hospital, will go to jail. Yes. But under the Measure 11 in Oregon guidelines, he would only serve, I think his attorney told him, 40 to 90 months. And he's already done that time. And that was the prejudice that he, I believe, part of the prejudice that he suffered, was that had he been competent instead of then found guilty but insane, he could have received a sentence that was much shorter than what he's already served. Under this, it may also be curiosity, under his present sentence, which was 20 years ago, would he get out if he were now declared competent? Insane. I mean, is he sane or whatever? Is he there for 20 years no matter what or there for 20 years or until there's a medical finding that he's able to be released? He's under the jurisdiction of the PSRB, which is able to decide whether or not he is able to be released for 20 years. The PSRB, is that a mental group or a prison group? A mental hospital. And if they found that he was fit to be in society, they would release him now? They could release him conditionally into a halfway house. Would that also be the case if he was in prison? Is there a possibility of taking him from prison, saying you've completed your prison sentence, but you're just not competent to go back and function normally, and then transfer him from the prison back over to the mental hospital? I believe what you're describing would be a civil commitment. If he finished his sentence and then was a danger to society, they'd have to have a whole new process, such as a civil trial, to determine his ability to be committed. I want to understand the prejudice. He got 20 years in the mental hospital, and if he had proceeded to trial and been convicted, what sentence would he have drawn? I believe his attorney told him somewhere between 40 and 90 months. Was his attorney right? Under the guidelines, I believe he would have gotten 40 months unless there was reason to upward depart him. This was for rape, was it? Yes. What's interesting in this case is that it's not one of the cases that we look at from the Supreme Court where the client is claiming, oh, I was incompetent back then, look at the record. Even though the judge found me competent, look at all these other things that were going on. Here we have a clear record and no judicial determination that he was fit to proceed. That's what this court should focus on in deciding to grant the writ. Thank you. May it please the Court, Carolyn Alexander for Respondent State of Oregon. I'd like to address the Court's concerns about the remedy and the prejudice, but I'd like to get back to that after I make a couple of points that I think are important to the disposition of the issues here. First of all, in the reply brief, and counsel argues now that the discharge report made no finding of competence the day before the petitioner was released to attend trial. That's true. However, Judge Beide, you mentioned the jury waiver colloquy. I think that's a crucial issue. The Court didn't make a finding of competence per se, but the Court did conduct an extensive colloquy on petitioner's ability to waive jury trial. In Moran v. Godinez, the U.S. Supreme Court, which was then remanded to this Court, Godinez v. Moran, says specifically the standard for competency to aid and assist is identical to that of all other constitutional rights. So waiver of jury trial, waiver of counsel, the standard is the same. So although the Court didn't specifically make a judicial finding of competency to proceed to trial, it made a judicial finding that he was competent implicitly to waive jury trial. The standard's identical. I think that goes certainly to the issue of prejudice, that although the Court didn't say on the record... ...simply in a formal colloquy. There is some indication that the judge knew that he'd been in the hospital recently, but there was no indication the judge had seen the records or got a report or anything like that. There isn't on this record, Your Honor. I believe that's correct. However, what counsel says is, as Judge Reinhart, you pointed out, counsel is talking to Dr. Piper Gerdes. He talked to his client. It appears from this record, and I think it's a reasonable inference, that the parties knew what was happening with Petitioner. His attorneys certainly knew. At the beginning of trial, before the Court conducted the waiver of jury, colloquy, counsel stood up and said, my client's been in the state hospital. That's why I'd like the Court to conduct a jury waiver colloquy, to make sure that he's competent to waive jury. It would have been nice to have a doctor somewhere to say at that time of that release, the last one, that is... I mean, what I can find there is that he's under medication, which should last for two weeks. Correct. I don't know whether that medication means that that means he's not going to rape anybody over the next two weeks, he's going to be subdued, or does it mean he's really capable mentally during that period of dealing with his lawyer and handling the communications? Well, that's a fair question, Your Honor. And Dr. Cooley, who did testify at trial, who apparently knew Petitioner, said, this young man has a problem when he stops his meds, which is what had happened and why he was admitted to the hospital prior to trial. He'd stopped taking his meds. He was drinking large amounts of coffee. And Dr. Cooley said that's his pattern. He does become delusional when he stops his medication. However, when he's on medication, he's pretty good. He's rational. He's able to function. His problem is when he stops taking the medications. So the inference, again, is that Dr. Cooley testified to that? Yes, he did. Yes, he did. What, during the trial? Yes, he did. Yes, he did. Because the issue was whether Petitioner was guilty except for insanity under Oregon statute. That's what Dr. Cooley was testifying as to his opinion about whether he was legally insane at the time of the crime. And Dr. Cooley found the fact that he was. So that issue was litigated. The issue of competency was taken care of by the jury waiver colloquy, if nothing else. Now I'm not quite sure what you're saying. You're saying Dr. Cooley's testimony did or did not shed light on the issue of competency. It didn't directly, Your Honor. It did in that what Dr. Cooley said was when he's on his medication, he's rational, he's functional. At the time of the crime, he wasn't on his medication. Prior to trial, he stopped taking his medication. So the inference is, in reference to your question, this long-acting, psychoactive drug cocktail, when he was taking those medications, he was rational and functional. And as Judge Bidey said, that's apparent from the record. He's coherent. He answers the questions. He testifies in his own defense, saying she consented. It wasn't rape. And I think the inference can be made. Pardon me, Your Honor? There were also statements at the sentencing hearing in which both the lawyer, his lawyer, and Mr. Lay himself said that when he took his medication, he was okay. Correct. Correct. And I think Mr. Lay himself recognized that that was the pattern. The post-conviction court made a finding that Petitioner was competent. Under Lampert v. Blodgett, a recent opinion, and I sent the court a letter of supplemental authority correcting the analysis under Lampert, that factual finding is not an unreasonable determination of the facts based on this record. It was a retroactive finding of competency, which can be done under Odell v. Woodford, based on the record, when the record is sufficient to support that determination, and it was in this case. Petitioner has to show, to show prejudice, because, again, it is a counsel claim. It's not a claim against the trial court. Has to show that he was, in fact, incompetent. Petitioner argues that prejudice can be presumed in this situation. Absolutely not. He must show that he was, in fact, incompetent, and there just isn't any support for that argument other than the fact that he was admitted to the hospital. He was found competent. The court conducted a colloquy. He was found guilty. I gather what your opponent's argument is, is that the last judicial finding was that he was not competent. Is that November? Is that right? Well, he was found incompetent in November. That's correct. He was then committed to the hospital. There was then a psychiatric but not a judicial finding that he was, at that point, competent. Correct. He then went back to the hospital a week before the trial, and the judge never had a second hearing with a psychiatrist in which he found him competent. Correct. He did have his colloquy, but there was no psychiatric testimony of that. That's correct, Your Honor. That is correct. That is correct. Again, my answer to that is that this is not a claim against the trial court. One of the other points that counsel makes in a reply brief is that the court under state law was required to hold a second hearing. That's absolutely not what the statute says. The statute says the court shall hold a hearing if one is requested. But if all of the parties are on board with the court that this is what had happened to this young man, this is why he went to the hospital, he was given the medications, the doctors say he's functional, he's rational. He's basically saying, yes, the lawyer could have asked for a second hearing. Certainly. But she didn't, and the question is whether that's incompetent. And more importantly, whether it was prejudicial. Well, he certainly could have asked for a second competency hearing. But under the law of this circuit, it's not an effective assistance of counsel if a hearing would be frivolous, if there was just simply no point and the court would have said. It doesn't seem to be frivolous. It just seems not reasonably likely to lead to something. Exactly. Exactly. Well, you're saying more than that. You're saying unless it would have led to a finding of incompetence, there's no prejudice. That's exactly right. I'm also saying that as well, that, in fact, there has to be a showing that the petitioner was incompetent. Is that true or just that it's reasonably likely that she would have been found incompetent? You know, I discussed that in the red brief, Your Honor. And I believe the cases of this circuit and of other circuits say no, that there has to be a showing, a factual showing that he was incompetent. Even when the question is effectiveness, why is that? Well, because that goes to the prejudice problem. He's got to show that there's factual support. So it's reasonably likely he would be found incompetent, not that he wasn't. I think you're probably right, Your Honor. But there certainly does have to be a show, a factual showing. And it defeats petitioner's argument that prejudice can simply be presumed. The other issue I would like to briefly address is that of the remedy. That's not been addressed in the briefs, but I would like to say briefly, I believe that if this court were to find that counsel was ineffective and there was prejudice shown in this situation, the remedy is not to vacate the conviction. The remedy is a retroactive determination of competency. And under Odell v. Woodford, this court has said that a retroactive determination of competency can certainly be done. That would be the remedy in this case. Well, then what? Then you determine that, yes, let's assume, you know, because we're talking about remedy means if your opponent were to win. Let's assume that you then determined, yes, he was incompetent at the time. Then what? Don't you then set aside the conviction? I'd have to think that through, Your Honor. I don't know if that necessarily, that may necessarily mean you do vacate the conviction. Well, how could you not? Pardon me? How could you not? It's a due process. Well, exactly, exactly, exactly. And that's why I'm saying, you know, I think exactly you're correct, that it would necessarily mean a vacation of the conviction. But I think the point is that this court wouldn't simply vacate the conviction. This court would order a retroactive determination of competency. If he was then found to be incompetent at the time, then the conviction would be vacated. So it's a two-step process rather than simply vacating the conviction. And as I said, Odal B. Woodford talks more about that particular issue, and I don't have that case with me. I believe Odal was not exactly an effectiveness case. I don't know if it matters, but it was, as I recall, it was a procedural case in the sense that the judge should have ordered a competency. I believe he was responding. It wasn't an effectiveness case. Correct. That's correct. Under Pate v. Robinson, I think that was a case similar to Pate. Yeah, exactly. I see my time is up. Would you address the question of the monthly sentence? Oh, yes, certainly, Your Honor. In Oregon, we have a guilty except for insanity option. Petitioner was found guilty except for insanity. In that case, it is a conviction. He gets the maximum amount, which is 20 years, under the Psychiatric Security Review Board, and he goes to the state hospital. The PSRB is required to hold regular hearings to determine, number one, if he continues to be mentally ill, and number two, whether he's a danger to the community. Both of those prongs must be met at every hearing. At any time when one of those prongs is not met, either his mental illness is cured or he's no longer a danger, as the evidence at the hearing supports, then he must be released. And that's the end of his time. So at any time, a defendant under PSRB jurisdiction can be released. So he can be released at any time in something less than 20 years. Absolutely. He could have already been released at this point. Absolutely. Absolutely. If they had proceeded to trial, what would have happened? If they would have proceeded to trial, he would have gotten, had he been convicted, a measure 11 sentence, which would have been 90 months. And barring any departures, he would have gone to prison. There is no, because of double jeopardy concerns, there is no ability to transfer an inmate from a prison sentence to a PSRB sentence or vice versa. He would have served his time and been released at that point. But he certainly would have served his 90 months, his mandatory minimum sentence. Under PSRB jurisdiction, again, it's impossible to predict how long a defendant will serve under PSRB jurisdiction. In other words, it turns out to be serving longer, but one wouldn't have known that. Correct. Absolutely correct. Thank you, Kathy. Thank you. Yes. Counsel admitted that if the attorney in this case would have brought it up, the court would have been compelled to hold a competency hearing. Counsel, it was incumbent upon counsel to bring that up at that time, noting all of the history that I've already described to you. Excuse me? Where did counsel admit that? Counsel said that had. Oh, you mean counsel didn't hear. Okay. Yes, that if he had brought it up, the court would have had to hold a hearing. And he didn't do that. But if there's no reasonable likelihood that the person would have been found incompetent, it doesn't matter. We can't look on this record and say that there can be a retroactive finding of competency, because there were no in the PCR court. I'm not asking you a question. It's still incumbent on. You're trying to make out an ineffectiveness claim. Yes. So you have to be able to demonstrate whether or not there is a reasonable likelihood that the person would have been found incompetent, don't you? We have to show that on the record there was a reason for counsel to bring it up. And the record shows that there was a reason for counsel to bring it up. You don't have to further show that there was prejudice. Well, the prejudice would then – we can't say that he was competent now because there was no finding. So prejudice is there because he went forward probably while he was incompetent. So you're saying it's a violation, a failure to ask for a hearing presumes the prejudice, and therefore counsel is incompetent? Is that what you're suggesting? I'm saying yes, that is true. But it's not an issue of whether he was in fact competent, as counsel was saying. It's that should he have brought it up, and if so, would he have been found incompetent? We don't know what would have happened because he didn't bring it up. We know that he had a history. That doesn't sound right in terms of an ineffectiveness claim. You're not – you don't have a merits claim you have here. You have an ineffectiveness claim. And you have to demonstrate some prejudice from the ineffectiveness. What is your prejudice if it isn't some reasonable likelihood that he would have been found incompetent? Otherwise, any lawyer who doesn't ask for an incompetence hearing is incompetent in any conviction to be released. But based on this record, Your Honor, there was a reasonable likelihood that he would be found incompetent. We can't look to Dr. Norman Cooley's testimony at the end of his insanity to then qualify him for competency. That doesn't work. But what Dr. Cooley does say was that I saw him in his symptomatic state, in his greatest level of symptoms. Again, there were times when we actually conversed fairly rationally. There were other times, however, when he wasn't rational at all. It's ER-191. In an incompetence hearing, there would have had to be a psychiatric testimony. Yes. And we don't have that. The best we know about the psychiatric testimony is what the various psychiatrists who dealt with him around this time said about him. And one was Cooley, and the other one was the one who released him from the hospital just before. And the third one was the one who dealt with his release in January. Right? There was those. Yes. It's the same doctor that found him unable, highly questionable. That was Cooley, wasn't it? Was Cooley. It's the same doctor that testified as opposing counsel. Well, what did Cooley say at the trial, which was a lot closer in time? At the trial. That's what I was reading you, that there are times, however, when he wasn't rational at all. What about when he's on medication, what did Cooley say? This is what he was saying, that I saw him, I don't know the exact temporal relationship between the medication was started and when I saw him, so I don't think that I saw him in his symptomatic state, in his greatest level of symptoms. Again, there were times with me when he actually conversed fairly rationally. There were other times, however, when he wasn't rational at all. The reports have indicated that he's fully symptomatic, and his ability to even deal with the simple interview situation is fairly distorted and disturbed. And then he goes on to answer questions later, saying, well, does he take drugs? Is he responding to the drugs? Yes. What we do know about the drugs were the list that I explained earlier, the Trilofan, Loxetane, Prolixen, Cogitin, and Depakote. Those were new drugs. We don't know how he was functioning because there was never a hearing to determine whether he was competent. He could have been a robot in answering yes to everything. We don't know. Okay. Let's suppose that, of course, you have both his counsel working with him who knows of the history and you have a judge who has a responsibility, a duty to ascertain that he can reasonably waive his right to a jury trial. Let's suppose that counsel had proceeded and asked for the competency hearing and that the psychiatrist had come back and said he's not competent at this time. What would have been the result of that? It would have been, I believe, a replay of what happened in November, which is that he would have been sent back to the hospital and held until he was given a clean bill of health to be able to aid and assist in his own defense. Then he still would have come back and we would have gone back through the whole colloquy again about whether he was competent to waive the jury trial, whether he wished to waive the jury trial. Then there should have been a hearing. There should have been a judicial determination that he, in fact, could go ahead. I understand. We're going to replay this whole thing as to whether or not he's going to waive a jury trial and whether he's going to plead not guilty by reason of sanity and so forth. Yes. He would have been able to go through the waiver of a jury trial, whether or not he wanted to testify, give up his right to remain silent. Do you have any evidence? Is there any evidence in the record that, in fact, Mr. Lay was not able to assist his counsel in his trial? We can't decide that on this record. There was no doctor's determination. The record certainly has quite a sight. After the waiver, there's a trial, and at the trial, Mr. Lay testifies at some length, answers questions, and it's a very coherent story, very repeatedly, and seems exceptionally coherent, actually. We know that demeanor can't be the only clue. I'm not saying only. I'm asking if it's at all relevant. You're asking what? Is it at all relevant? I'm not asking to clarify. Oh, that he answered questions? He didn't just say yes. You said at some point that he was just saying yes like a robot, but he wasn't just saying yes like a robot. He was giving discursive, coherent answers to a large number of questions. On the cold record, he said yes, Your Honor, no, Your Honor, and then he testified. No, no, I'm not saying he wasn't saying yes, Your Honor, no, Your Honor. I'm talking about the trial. He was saying much more than yes, Your Honor, no, Your Honor. Once there has been a bona fide doubt, the cases say you can't then just resort to the opposite conclusion based on other evidence. There needs to be ---- If he had gotten into the witness stand and begun talking about revelations from God and visions and things like that, at some point, either on counsel's motion or even on the court's own motion, when I said, you know something, this guy can't proceed to aid in his own defense at this point. Whether he was confident or not at the start of the trial, he certainly has devolved into something else, and it is clear that he's no longer able to assist, and we could have stopped it at any time, right? Yes. It wasn't just at the time that we waived the jury trial, but at any time during his trial. If it had appeared either on the court's own motion or to his counsel that there was a problem, we could have stopped it. Yes, Your Honor. What you're describing is one way that a floridly, psychotic person who is unable to aid and assist would have presented himself. We know that's not the only way, and we know that the cases say that's the whole reason for judicial determination, because we can't tell from just demeanor or from just acting out. We know that all crazy people don't just scream and rant. We know that they perform in different levels of functioning, and, in fact, what opposing counsel was describing was his up-and-down wavering. What we needed in this case was for the attorney to raise the issue and have the judge to decide, bring the doctors in, make a determination that he was able to aid and assist so that he could have a fair trial. Thank you, counsel. Thank you. The case just argued will be submitted. The court will take a brief recess. All rise. This court shall stand in recess.
judges: Reinhardt, Berzon, Bybee